**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————

**LORENZO RODRIGUEZ,**

                    **Petitioner,**          **18-cv-6202 (JGK)**

        **- against -**                **MEMORANDUM**
                                     **OPINION AND ORDER**

**SUPERINTENDENT OF CLINTON**
**CORRECTIONAL FACILITY,**

                    **Respondent.**
————————————————————————————

**JOHN G. KOELTL, District Judge:**

    Lorenzo Rodriguez brought this pro se petition for a writ
of Habeas Corpus pursuant to 28 U.S.C. § 2254. Mr. Rodriguez was
convicted in the New York State Supreme Court, New York County,
of second-degree burglary and sentenced to a 14-year prison
term, to be followed by five years of post-release supervision.
After the Appellate Division of the New York State Supreme Court
affirmed the conviction, and a judge of the New York State Court
of Appeals denied leave to appeal, Mr. Rodriguez filed this
petition, arguing that: (1) he was deprived of his right to
counsel at various pre-trial hearings; (2) the denial of an
adjournment request was a violation of his constitutional
rights; (3) the trial court's instructions regarding his absence
during trial violated the United States Constitution; and (4)
the prosecutor's summation misstated the law. For the reasons
explained below, Mr. Rodriguez's petition is **dismissed.**

**I**

**A**

Evidence in the state court record shows the following
facts.

On August 28, 2013, Antonia Lopez entered her home at 552
West 160th Street, Apartment 18, in New York, New York, and saw
a male stranger leaving the apartment through a window and onto
the adjacent fire escape. Tr. at 583-86.[1] Ms. Lopez immediately
noticed that an iPad and a piggybank were missing. Tr. at 588.
Policer officers Orlando Corchado and Andrew Lassen, who were
patrolling the apartment building in response to recent
burglaries, saw Mr. Rodriguez climb up the fire escape onto the
roof. Tr. at 614-17. Mr. Rodriguez was wearing latex gloves and
carrying a white piggybank. Tr. at 617. Mr. Rodriguez stated
that he was working for the superintendent of the building and
then went back down the fire escape, despite the police
officers' instructions to stop. Tr. at 618. Upon entering the
apartment through the window, Mr. Rodriguez said "I'm sorry,"
returned the piggybank to Ms. Lopez's husband, and attempted to
leave the apartment through the main entrance. Tr. at 589. The
officers, who followed Mr. Rodriguez down the fire escape and

---

[1] Record citations preceded by "Tr." refer to transcripts from state court
proceedings collected in ECF No. 21, Ex. 6. Record citations preceded by
"SR1" refer to the state record documents collected in ECF No. 21, Ex. 3.
Record citations preceded by "SR2" refer to the state record documents
collected in ECF No. 21, Ex. 4.

into the apartment, asked Ms. Lopez if she knew Mr. Rodriguez
and she told them that he was a thief. Tr. at 589-90. Officer
Corchado apprehended and arrested Mr. Rodriguez in the hallway
of the apartment. Tr. at 618-620. Mr. Rodriguez pulled an iPad
out of his pants and was about to discard it when one of the
residents of the apartment grabbed it from him. Tr. at 636.
Shortly after the arrest, Officer Lassen searched Mr. Rodriguez
on the landing just outside the apartment and recovered two
flashlights, latex gloves, and an iPad charger. Tr. at 621-22.

**B**

The State charged Mr. Rodriguez with second-degree
burglary. Tr. at 130. Mr. Rodriguez twice asked the court to
replace his court-appointed counsel, and the court accommodated
him each time. Tr. at 10, 25. While working with the third
court-appointed lawyer, Robert Weinstein, Mr. Rodriguez decided
to proceed pro se. Tr. at 32. In the colloquy that followed, the
court asked Mr. Rodriguez a series of questions to ensure that
Mr. Rodriguez understood the consequences of self-
representation. Tr. at 33-37. Specifically, the court explained
in detail that Mr. Rodriguez would have to pick a jury, make an
opening statement, ask witnesses all the questions, and do a
summation, all through an interpreter. Tr. at 33-37, 40. The
court also explained to Mr. Rodriguez that representing himself
is a "very, very bad idea" and "a little bit like a doctor

treating himself for his own illness." Tr. at 34. The court then appointed Mr. Weinstein to serve as standby counsel over Mr. Rodriguez's objection and approved the pro se application. Tr. at 37-38, 41.

At the suppression hearing held on May 13, 2014 to determine the admissibility of statements made by the defendant and evidence seized from him, after the prosecution questioned Officer Corchado, Mr. Rodriguez asked a question in cross-examination that the court ruled was impermissible and directed Officer Corchado not to answer. Tr. at 68. In response, Mr. Rodriguez declared "I'm not going to continue here," and the court warned him that if he left, the hearing would continue without him. Id. After a private colloquy with Mr. Weinstein, Mr. Rodriguez decided to have Mr. Weinstein proceed with the cross-examination of Officer Corchado. Tr. at 71. The following day, Mr. Rodriguez changed his mind once again and decided to continue the hearing pro se. Tr. at 106-07. For the remainder of the suppression hearing and during a subsequent Sandoval hearing to determine the admissibility of Mr. Rodriguez's prior covictions, Mr. Rodriguez represented himself. Tr. at 108-09, 119. The trial court denied a motion to suppress the statements the defendant made to the police on the roof to the effect that he was working for the superintendent. The court found that the defendant was not in custody at the time and no Miranda warnings

4

were required. Tr. at 113. Subsequent statements at the police station to the effect that the defendant was visiting a girlfriend were not suppressed apparently because they were not the result of police questioning. Id. Physical evidence seized from the defendant was not suppressed because the items were seized incident to a lawful arrest. Id.

As a result of the Sandoval hearing, the trial court determined that if the defendant testified at trial, the prosecution could ask the defendant whether he was convicted in 1999 of robbery in the second degree and grand larceny in the third degree, but not about the underlying facts of those cases, or about the defendant's parole status at the time of those convictions. The prosecution could also ask whether the defendant was convicted of a misdemeanor in 2010, but not the name of the misdemeanor. Tr. at 120.

During the voir dire examination of potential jurors that followed, Mr. Rodriguez continued to represent himself, and the court explained the procedure in detail. Tr. at 205. When his for-cause challenge to a juror was overruled by the court, Mr. Rodriguez declared that he did not want to continue with the trial and left the courtroom. Tr. at 209-10. At first, the court proceeded with voir dire examination in Mr. Rodriguez's absence but ultimately dismissed that panel. Tr. at 218.

On his way to the court for the next court date, May 19, 2014, Mr. Rodriguez was injured when the corrections bus that was transporting him crashed. Tr. at 229-30. In light of his injuries, trial was postponed eventually for several months to September 3, 2014. Tr. at 231, 236, 240. After a few more delays, the trial ultimately restarted on October 14, 2014. At that point, the court advised Mr. Rodriguez to permit Mr. Weinstein to sit at the defendant's table to assist the defendant during the proceedings, but Mr. Rodriguez refused. Tr. at 251. On October 20, 2014, when jury selection was about to commence, Mr. Rodriguez asked for a one-month adjournment on the grounds that he was not ready to proceed. Tr. at 261. The court denied the request, reasoning that it had been five months since the last time the trial started and two and a half months after Mr. Rodriguez recovered from his injuries, and that the defendant had the discovery materials for five months. Tr. at 265-69. In response, Mr. Rodriguez refused to participate and left the courtroom. Tr. at 269, 271. The court and Mr. Weinstein informed Mr. Rodriguez that he could not both represent himself and be absent during trial. Tr. at 271-73.

The trial proceeded without Mr. Rodriguez, with Mr. Weinstein representing Mr. Rodriguez. At the outset of jury selection, the court instructed the prospective jurors that Mr. Rodriguez exercised his right not to be present and that the

jury should not draw any inferences from the defendant's
absence. Tr. at 283. On the second day of jury selection, Mr.
Rodriguez asked to resume self-representation, but the court
denied the request. Tr. at 415. The court held that Mr.
Rodriguez was not capable of representing himself because he had
shown that he could not abide by the court's rulings and would
be disruptive in court. Id. The court stated that Mr. Rodriquez
was permitted to stay for the trial but would have to be
represented by Mr. Weinstein. Tr. at 416. Mr. Rodriguez refused
to accept the court's order and was removed from the courtroom.
Tr. at 417. The rest of jury selection and trial took place in
Mr. Rodriguez's absence. The trial lasted for two days and the
jury found Mr. Rodriguez guilty of second-degree burglary after
24 minutes of deliberation. Tr. at 711, 713-14. The court
sentenced Mr. Rodriguez to a 14-year prison sentence as a second
violent felony offender, followed by a five-year term of post-
release supervision. Tr. at 724.

C

Mr. Rodriguez challenged his conviction in the Appellate
Division of the New York State Supreme Court on four grounds.
First, Mr. Rodriguez argued that his waiver of the right to
counsel during the suppression hearing was not knowingly,
voluntarily, and intelligently made. The appellate court held
that Mr. Rodriguez's waiver of counsel was invalid under New

York State law because the trial court has failed to "ensure that [Mr. Rodriguez] was aware of his exposure." People v. Rodriguez, 66 N.Y.S.3d 488, 496 (App. Div. 2018). However, the court concluded that a new hearing would serve no purpose and need not be ordered because the evidence of Mr. Rodriguez's guilt was overwhelming. Id. at 497. Second, Mr. Rodriguez argued that the trial court committed reversible error by denying his request for a one-month adjournment. The appellate court found that there was no abuse of discretion in denying the adjournment in light of the limited materials that Mr. Rodriguez claimed he needed time to review, and the fact that they were in his possession for five months. Id. Third, Mr. Rodriguez argued that the trial court delivered a prejudicial instruction regarding his absence from the courtroom because it suggested that Mr. Rodriguez absconded. The appellate court rejected the claim, noting that "nothing in the formulation used by the court . . . suggested that defendant absconded. Arguably, it inured to defendant in dispelling any notion that he was excluded from the courtroom by the court." Id. Fourth, Mr. Rodriguez argued that the prosecution committed misconduct in its summation by misstating the elements of the charged crime when it stated that it merely had to prove unlawful entry with intent to commit a crime in Ms. Lopez's bedroom as opposed to in the building as a whole. The appellate court rejected the claim as unpreserved

and, alternatively, without merit because the prosecution's summation accurately stated the statutory definition of a building, under which unlawful entry into a part of a building with the requisite intent constitutes burglary even if the defendant entered the building as a whole with license or without the intent to commit a crime. Id. at 498.

## II

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Washington v. Griffin, 876 F.3d 395, 403 (2d Cir. 2017).[2]

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's conclusion. Williams v. Taylor, 529 U.S. 362, 405 (2000); see Washington, 876 F.3d at 403.

A state court decision involves an unreasonable application of clearly established federal law when "the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685 (2002); see also Washington, 876 F.3d at 403. To meet that standard, the state court's decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011); see also Washington, 876 F.3d at 403. "[I]t is well-established in [this] circuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003).

### III

### A

In his petition, Mr. Rodriguez first argues that he was deprived of his right to counsel at the suppression hearing and the Sandoval hearing.

The Sixth Amendment provides that a criminal defendant has a "right . . . to have the assistance of counsel for his defence." U.S. Const. Amend. VI. That right is "part of the due process of law that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States." Faretta v. California, 422 U.S. 806, 818 (1975). The defendant, however, is "free personally to decide whether in his particular case counsel is to his advantage." Id. at 834. Nevertheless, because self-representation "relinquishes . . . many of the traditional benefits associated with the right to counsel . . . the accused must knowingly and intelligently forgo those relinquished benefits." Id. at 835. To do that, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Id. (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)). The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." Iowa v. Tovar, 541 U.S. 77, 88 (2004). "The information a defendant must possess in order to make an intelligent election . . . depend[s] on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." Id. While "not every omission by the

district court during a <u>Faretta</u> inquiry will invalidate an otherwise knowing and intelligent waiver," to ensure that a defendant's waiver is knowingly and intelligently made, the trial court should "inform a defendant of the nature of the charges, the range of allowable punishments, and the risks of self-representation." <u>Torres v. United States</u>, 140 F.3d 392, 403 (2d Cir. 1998) (citing <u>von Moltke v. Gillies</u>, 332 U.S. 708, 724 (1948)).

In this case, the trial court fell short of ensuring that Mr. Rodriguez's waiver was knowingly and intelligently made. It is true that upon the first request to represent himself, the trial court conducted a lengthy colloquy with Mr. Rodriguez during which it established that Mr. Rodriguez has experience with the criminal justice system and that he understood in detail the specific tasks that he would have to undertake in the course of self-representation. Tr. at 33-40. And the court did warn Mr. Rodriguez that representing himself was a bad idea. <u>Id.</u> at 34. Nonetheless, the failure to warn Mr. Rodriguez about his possible sentence before he was permitted to represent himself rendered his waiver of counsel defective. While the record shows that Mr. Rodriguez likely knew that a conviction would lead to a prison sentence, at no point before allowing him to proceed <u>pro se</u> did the trial court inform him about the extent of potential punishment which in this case resulted in a sentence of

imprisonment of fourteen years. Because the waiver must be made "with an apprehension of . . . the range of allowable punishments," von Moltke, 332 U.S. at 724, Mr. Rodriguez's waiver was not made "knowingly and intelligently." Faretta, 422 U.S. at 835.

The State argues that Mr. Rodriguez's waiver was valid because there is no requirement under Supreme Court precedent to inform a defendant who wants to waive the right to counsel during pre-trial proceedings of potential sentencing exposure. The State relies on language in United States v. Fore, where the Court of Appeals for the Second Circuit stated that "our case law does not require an explicit accounting of the potential punishment in a Faretta discussion." 169 F.3d 104, 108 (2d Cir. 1999). This argument is flawed. Both Supreme Court and Second Circuit cases, including Fore, clearly state that waiver of counsel must be made "with an apprehension of . . . the range of allowable punishments." von Moltke, 332 U.S. at 724; see also Fore, 169 F.3d at 108 ("The content of [a waiver-of-counsel] discussion normally includes a discussion of the nature of the charges, the range of allowable punishments, and the risks of self-representation."); Torres, 140 F.3d at 405 (stating the same in the context of a pre-trial waiver of counsel). In Fore, the Court of Appeals held that an "explicit accounting of the potential punishment" was unnecessary because the defendant "was

'clearly aware' of the significant penalties he would face if convicted" where the trial court warned the defendant, who was ultimately sentenced to a term of 27 months in prison, that he could face a term of up to 10 years in prison. 169 F.3d at 108 (quoting United States v. Hurtado, 47 F.3d 577, 583 (2d Cir. 1995)). The defendant in Fore argued that such a warning was defective, and his waiver of counsel thus invalid, because the trial court failed to inform him that he faced a maximum sentence of 125 years if the court imposed consecutive sentences on each of the possible counts of conviction. In rejecting the defendant's claim and stating that such "explicit accounting" was unnecessary, the court held that the sentencing warning that the trial court gave provided the defendant "a realistic picture . . . regarding the magnitude of his decision." Id. In contrast, the trial court in Mr. Rodriguez's case provided no warning about a potential sentence. While the trial court need not have provided a full accounting of potential sentences, it must have given the defendant a "realistic picture," id., and ensured that the defendant was "clearly aware of the penalties he face[d] if convicted." Hurtado, 47 F.3d at 583.[3] By staying entirely silent on the range of punishments before permitting Mr. Rodriguez to

---

[3] The only specific discussion of penalty that the State points to is a discussion of a potential plea in which the trial court stated that it could allow the defendant to plead guilty and be sentenced to seven years' imprisonment or, if the prosecutor agreed to a lesser charge, the sentence could be five years. Tr. at 232. This did not amount to realistic advice as to the actual sentence the defendant faced.

represent himself, the trial court failed to ensure that his waiver was knowingly and intelligently made.

The trial court's error, however, does not necessarily warrant habeas relief for Mr. Rodriguez. "Federal courts reviewing [habeas] claims, other than those of structural error, ask whether the alleged error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Yarborough v. Keane, 101 F.3d 894, 899 (2d Cir. 1996) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)). The deprivation of the right to counsel during pre-trial hearings is not a structural error. See Coleman v. Alabama, 399 U.S. 1, 11 (1970); Arizona v. Fulminante, 499 U.S. 279, 307 (1991); Dallio v. Spitzer, 343 F.3d 553, 569 n.4 (2d Cir. 2003) (Katzmann, J., concurring). Therefore, the Court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard." Fry v. Pliler, 551 U.S. 112, 121 (2007). "Under this standard, habeas petitioners . . . are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." Brecht, 507 U.S. at 637.

Upon determining that Mr. Rodriguez's waiver of counsel was defective, the Appellate Division found that the conventional remedy—a new suppression hearing, followed by a new trial if the suppression hearing led to suppression of the evidence in

question—would serve no purpose because it was clear beyond a reasonable doubt that the result at a new trial would be the same. Rodriguez, 66 N.Y.S.3d at 497.  The appellate court concluded that even if defendant prevailed at the suppression hearing—which itself was unlikely—a new trial would not have altered the outcome because the evidence of Mr. Rodriguez's guilt was overwhelming. Id. As the Appellate Division explained:

> Even assuming counsel would somehow be successful in arguing for the suppression of statements and property recovered, the evidence of defendant's guilt was overwhelming. Defendant was caught red-handed. Lopez encountered defendant—a person she did not know and did not allow into her home—in her bedroom. Defendant was observed wearing latex gloves by Lopez and Police Officer Corchado. He was also observed to be in possession of Lopez's piggy bank.

> Similarly, even assuming counsel would have been able to secure a more favorable Sandoval ruling, and defendant would have testified on his own behalf, the evidence overwhelmingly proved defendant knowingly and unlawfully entered the Lopez apartment with the intent to take property.

Id. Accordingly, the appellate court properly concluded that the denial of counsel was harmless error beyond a reasonable doubt. For the same reasons, it is plain that the limited deprivation of Mr. Rodriguez's right to counsel did not result in "actual prejudice." Brecht, 507 U.S. at 637. As such, the Appellate Division did not unreasonably apply clearly established Supreme Court precedent.

**B**

Mr. Rodriguez next argues that the trial court violated his due process right by denying his request for a one-month adjournment.

"The matter of continuance is traditionally within the discretion of the trial judge . . . ." <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589 (1964). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." <u>Id.</u> "The Supreme Court has identified several factors to consider in determining whether a denial of a continuance is an abuse of discretion, including the judge's reasons for denying the continuance, the arguments made to the judge in support of the continuance, the diligence of the defendant in requesting the continuance, and the degree to which the denial of the continuance ultimately prejudiced the defendant." <u>Marrant v. Cuomo</u>, 447 F. App'x 234, 235-36 (2d Cir. 2011).

In this case, the appellate court properly concluded that the trial court did not abuse its discretion in denying the adjournment request. In particular, in denying the request, the trial court noted that the documents that Mr. Rodriguez claimed he needed to review were not voluminous, and that he had five

months to review them. Tr. at 263-265. Furthermore, prior to his request for adjournment, Mr. Rodriguez had previously told the court that he was ready to proceed, and the court scheduled the trial accordingly. Id. at 265. As such, the trial court had compelling reasons for denying the request for adjournment. Additionally, to the extent that his request was based on his need for more time to prepare for trial, because Mr. Rodriguez ultimately did not participate in the trial and was represented by Mr. Weinstein, there was no actual prejudice caused by the denial. Accordingly, the denial of an adjournment did not amount to a denial of due process and the Appellate Division did not unreasonably apply clearly established Supreme Court precedent.

C

Mr. Rodriguez's third argument is that the instruction that the trial court gave the jury about his absence from the courtroom was a violation of the Fourteenth Amendment. On direct appeal, Mr. Rodriguez characterized this claim as a failure to follow the pattern jury instruction and brought the claim under state law. SR1 at 34. The state appellate court therefore did not consider his constitutional argument.

Before seeking habeas relief in federal court, a petitioner must exhaust all state-provided remedies. 28 U.S.C. § 2254(b)(1). For exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state

court if it is clear that the state court would hold the claim procedurally barred." Harris v. Reed, 489 U.S. 255, 263 n.9 (1989). In those circumstances, the petitioner is deemed to have no "remedies available" and the claim is therefore exhausted within the meaning of § 2254(b)(1). Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). However, such a procedurally defaulted claim may be reviewed by a federal court only "upon a showing of cause for the default and prejudice to the petitioner." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). Cause may be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by state officials made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." Murray v. Carrier, 477 U.S. 478, 488 (1986). As for prejudice, in a defective jury charge claim, the relevant inquiry on habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." United States v. Frady, 456 U.S. 152, 169 (1982). Alternatively, to overcome a default, a petitioner must demonstrate that a failure to consider the claim will result in

a miscarriage of justice because the petitioner is actually innocent. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Mr. Rodriguez did not raise his constitutional argument regarding the jury instruction in his direct appeal. Accordingly, this argument is procedurally defaulted under New York law. See People v. Harris, 491 N.Y.S.2d 678 (App. Div. 1985) (citing N.Y. Crim. P. L. § 440.10(2)(c)). While such a defaulted claim must be deemed exhausted for the purposes of this petition, Grey, 933 F.2d at 121, Mr. Rodriguez needs to demonstrate cause and prejudice or a miscarriage of justice to bring this defaulted claim now. Thompson, 501 U.S. at 750. Mr. Rodriguez cannot satisfy any of these showings. Mr. Rodriguez asserts no cause for the failure to bring the claim in the state proceedings. Furthermore, Mr. Rodriguez cannot demonstrate prejudice from the warning that the trial court gave about his absence. First, the only deviation from the New York pattern instruction about an absent defendant in the instruction that the trial court gave was to tell the jury that Mr. Rodriguez exercised his right not to be present. If anything, this instruction removed any doubt about his absence rather than lead the jury to speculate that Mr. Rodriguez absconded, as Mr. Rodriguez hypothesized in his state court appeal. Second, the evidence of his guilt was overwhelming. Therefore, whatever inference the jury drew about his absence, there is no doubt

that the ultimate verdict was well supported by the evidence presented at trial. For the same reason, Mr. Rodriguez cannot show that a failure to consider this claim would result in a miscarriage of justice. Accordingly, his due process claim about the jury instruction is procedurally barred and, in any event, without merit.

D

Mr. Rodriguez's fourth claim is that the prosecution's summation regarding the elements of robbery misstated the law and constructively amended the prosecution's trial theory. Mr. Rodriguez has argued that the prosecutor incorrectly stated that the state only needed to prove that Mr. Rodriguez was in Mr. Lopez's bedroom illegally, as opposed to being illegally in the apartment building as a whole. This formulation, Mr. Rodriguez asserted, undermined his defense that he was invited inside the apartment building by another tenant. SR1 at 41. Additionally, Mr. Rodriguez claims ineffective assistance of counsel for failure to preserve this claim. The Appellate Division determined that this claim was unpreserved and the court declined to review it in the interest of justice. As an alternative holding, the court found that the prosecutor correctly state New York law. Rodriguez, 66 N.Y.S.3d at 498.

As an initial matter, this claim is procedurally barred.

A habeas court may not review a federal issue when the state court relied on "a state law ground that is independent of the federal question and adequate to support the judgment." Thompson, 501 U.S. at 729. New York's contemporaneous objection rule constitutes such an independent and adequate state law ground. Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011). Accordingly, the failure to follow the rule precludes habeas review unless the appellate court's application was an "exorbitant misapplication[] . . . that serve[s] no legitimate state interest." Id.

In this case, Mr. Rodriguez's lawyer failed to make a specific contemporaneous objection to the summation during the trial. Tr. 139-140. The Appellate Division held that the claim was unpreserved for appellate review because Mr. Rodriguez's counsel's "unelaborated objections" were inadequate to make his position known to the trial court. Rodriguez, 66 N.Y.S.3d at 498. This decision was a reasonable application of the rule that "[a] general objection is not sufficient to preserve an issue since [it] would not alert the court to defendant's position." Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007). See also People v. Vega, 657 N.Y.S.2d 30, 31 (App. Div. 1997) ("Defendant's challenges to the prosecutor's summation are unpreserved because defendant made only general objections during the summation."). Accordingly, this claim is procedurally

barred, and Mr. Rodriguez needs to show cause and prejudice to overcome the bar. Thompson, 501 U.S. at 750.

Mr. Rodriguez's claim of ineffective assistance of counsel—whether as a cause for his failure to press the summation error in the state appellate court or as a standalone claim for habeas relief—is without merit. In either context, "[t]he benchmark for judging any claim of ineffectiveness of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984); see also Murray v. Carrier, 477 U.S. 478, 488 (1986) (applying Strickland standard to the cause and prejudice inquiry in habeas review). "[T]he defendant must show that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Mr. Rodriguez cannot meet this demanding standard here because, as the Appellate Division also explained, the prosecution's summation accurately characterized the law. Therefore, Mr. Weinstein's failure to raise a more elaborate objection to the summation, which resulted in the procedural default, could not have amounted to deficient performance and prejudiced Mr. Rodriguez.

The prosecutor accurately characterized New York law. New York Penal Law § 140.00(2) provides that "[w]here a building

consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building." See also People v. Smith, 534 N.Y.S.2d 1021, 1022 (App. Div. 1988) ("The fact that the defendant was properly in the common areas of the house did not give him a license to enter the locked room of another tenant."). As a result, the prosecution correctly stated that it is sufficient under New York law to prove that Mr. Rodriguez entered Ms. Lopez's bedroom without permission. For the same reason, the prosecution's summation did not result in a constructive amendment of the indictment, which stated that Mr. Rodriguez "knowingly entered and remained unlawfully in a building located at 552 West 160th Street with intent to commit a crime therein, and said building was a dwelling." Under Penal Law § 140.00(2), a unit within a building is a building for the purposes of the burglary statute, and therefore "a building located at 552 West 160th Street" can refer to both the building as a whole and the individual units within it. See People v. James, 612 N.Y.S.2d 131 (App. Div. 1994) ("[T]he trial court did not constructively amend the indictment and enlarge the People's theory of burglary by instructing the jury that the term 'building' included the separate units within."). Accordingly, Mr. Rodriguez's claim regarding the prosecutor's summation is both procedurally barred and without merit.

**E**

In his reply to the state's answer to his habeas petition, Mr. Rodriguez included two new claims and the Court granted the state permission to file a surreply. First, Mr. Rodriguez claims that the prosecution suppressed exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Bagley, 473 U.S. 667 (1985). The alleged evidence consisted of surveillance videotape and Mr. Rodriguez's own telephone that, according Mr. Rodriguez, would have established that he did not commit the burglary. Second, Mr. Rodriguez claims that he was framed for the burglary by the police who committed a violation of his Equal Protection rights.

The state argues persuasively that the new claims cannot be heard because they were not included in the initial habeas petition. Rules Governing Section 2254 Cases in the United States District Courts provide that "the petition must specify all the grounds for relief available to the petitioner." Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts. In accordance with this Rule, courts in this Circuit have routinely held that only claims raised in a Section 2254 petition itself are appropriately considered in habeas proceedings, and that claims raised solely in the petitioner's reply should not be reviewed. See, e.g.,

<u>Ennis v. Artus</u>, No. 09-cv-10157, 2011 WL 3585954, at *19
(S.D.N.Y. Aug. 12, 2011) (collecting cases), <u>report and</u>
<u>recommendation adopted</u>, No. 09-cv-10157, 2012 WL 3957046
(S.D.N.Y. Sept. 10, 2012). Accordingly, these claims need not be
considered.

In any event, the claims are without merit. Mr. Rodriguez
fails to provide any basis for the claim that there was any
exculpatory evidence that was withheld. There is likewise no
basis for Mr. Rodriguez's argument that he was innocent and
framed by the police, particularly in view of the finding of the
Appellate Division that the proof of Mr. Rodriguez's guilt
presented at trial was overwhelming. Accordingly, the claims
raised in Mr. Rodriguez's reply are denied.

**CONCLUSION**

The Court has considered all of the arguments raised by the
parties. To the extent not specifically addressed, the arguments
are either moot or without merit. For the reasons explained
above, the petition for a writ of habeas corpus is **dismissed.**
The Clerk is directed to enter judgment dismissing the petition
and to close this case.

Because the petitioner has failed to make a substantial
showing of the denial of a constitutional right, the Court
declines to issue a certificate of appealability pursuant to 28
U.S.C. § 2253(c).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purposes of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

**Dated:**   **New York, New York**
            **January 6, 2021**            /s John G. Koeltl
                                     _____
                                         **John G. Koeltl**
                                 **United States District Judge**